### FREDERIKA SCHENKL *vs.* EDWARD A. DANA.

Suffolk. March 16. — Sept. 3, 1875. AMES & ENDICOTT, JJ., absent.

The property of a firm consisted of patent rights for valuable improvements in weapons of war, with the machinery, tools and stock required for their manufacture, and of unfinished government contracts for the supply of such weapons. One of the partners died, and the surviving partner, with the assent of the administrator of the deceased partner, employed extra labor to finish existing contracts and en

tered upon new contracts, employing the machinery, patents and property of the firm therein. *Held,* on a bill in equity by the administrator against the surviving partner for a settlement of the partnership accounts, that the surviving partner was only bound to serve gratuitously in at once winding up the partnership and accounting to the representative of the deceased partner, and that, for all further personal services rendered in carrying on the business, he was entitled to compensation.

Colt, J. The plaintiff, as administratrix of her husband, brings this bill against the defendant, as surviving partner, for a settlement of the partnership accounts of Schenkl & Dana. Both parties appeal from the decree which was ordered at the hearing before a single judge. The case comes up on his report with a statement of his findings upon the evidence, which is all reported. Only two questions are now in controversy.

1. The defendant contends that he is entitled to share the profits on time fuzes manufactured by the plaintiff's intestate during the life of the partnership and prior to a settlement made by them in 1863. The judge finds upon all the evidence that the defendant is concluded by that settlement from now claiming profits which were then allowed to his partner ; and looking at all the evidence and the relations of the parties disclosed, we can see no occasion to doubt the correctness of his finding. For, admitting that the time fuze is to be treated as a further improvement on the Schenkl shell, and that its manufacture would properly come within the contemplated business of the partnership, yet it is clear that either party, with the consent of the other, might disclaim any profits and escape any losses growing out of its independent manufacture by the other. This is the evident relation in which the parties stood to each other up to the time of the settlement of 1863. The omission in subsequent settlements of all claim for time fuzes made during the period in question tends to confirm this view. And there is no element of fraud, accident or mistake disclosed which requires us, after so long time, and after the death of one party, to go behind the settlement.

The manufacture of time fuzes by the plaintiff's intestate is claimed in the defendant's answer to have been from the first a partnership transaction, the profits of which were to be accounted for as such ; and in the transactions subsequent to the settlement it is so treated by the defendant. It is too late to claim that it is now to be treated as independent of the partnership, and that the

defendant's alleged share of the profits is to be allowed to him by way of set-off.

2. On the part of the plaintiff it is claimed that the decree appealed from, so far as it allows reasonable compensation to the defendant for carrying on and closing up the business of the firm after the death of Schenkl, should be reversed.

There is no occasion in this case to question the general rule of law relied on, that upon the dissolution of an ordinary mercantile partnership by death, the surviving partner is not entitled as matter of law, in the absence of special agreement, to be paid for his personal services in winding up the business and disposing of the assets. But this rule, in its practical application to the final settlement of partnerships, must in equity be largely varied by the nature of the business carried on, the capital employed, the state of the accounts with the deceased partner, the necessity of continuing the business for the purpose of realizing most from the assets, and especially by the fact that such continuance is known and assented to by the legal representative of the deceased partner. At the time of Schenkl's death, the property of this firm consisted of patent rights for valuable improvements in weapons of war, with the machinery, tools and stock required for their manufacture, and with certain unfinished government contracts for the supply of the same. The war was in full progress. We cannot say, upon the evidence in this case and considering the peculiar character of these assets, that it was not wise and prudent for the defendant, in order to close the concern to the best advantage and realize most for its property, to complete existing contracts, and use the tools and consume the stock, if necessary, in filling further government orders. At all events, this mode of continuing and finishing the business of the firm was assented to and approved by the plaintiff, who indeed asserts in the bill that it would have been disastrous to all parties to have done otherwise. It is not the case where property of a deceased partner is used wrongfully without the knowledge or consent of his personal representatives. The defendant is to be regarded more like a trustee who has managed an estate for the benefit of another with his approval, and who is entitled to compensation when the *cestui que trust* seeks to avail himself of the benefits of such management.

Under the general rule above stated, all that can be required of the surviving partner is that he proceed at once to wind up the partnership and account with the legal representative of the deceased partner. In the absence of any agreement, he is entitled to no pay for his personal services in the strict discharge of this duty. But if, with the assent of the administrator of the deceased partner, he employs extra labor to finish existing contracts; if he enters upon new contracts, employing the machinery, patents and property of the firm therein; then, to the extent of his personal services devoted to such extra work, he is entitled to compensation. This distinction is recognized by Vice Chancellor Wigram in *Willett* v. *Blanford*, 1 Hare, 253, and in the cases cited by him. See also Lindley on Part. (3d ed.) 1034 *et seq.*; Story on Part. (6th ed.) §§ 322, 343, 350 & notes.

We find nothing in the facts of this case, or in the law as laid down in the cases cited by the plaintiff,[*] which requires us to change the decree of the single judge in this respect.

*Decree affirmed.*

*J. G. Abbott & J. L. Stackpole*, for the plaintiff.
*E. R. Hoar & R. D. Smith*, for the defendant.

---

[*] *Burden* v. *Burden*, 1 Ves. & B. 170. *Crawshay* v. *Collins*, 15 Ves. 217, 227. *Stocken* v. *Dawson*, 6 Beav. 371. *Knox* v. *Gye*, L. R. 5 H. L. 656 *Barfield* v. *Loughborough*, L. R. 8 Ch. 1. *Ambler* v. *Bolton*, L. R. 14 Eq. 427 *Holme* v. *Hammond*, L. R. 7 Ex. 218. *Cox* v. *Hickman*, 8 H. L. Cas. 268 *Washburn* v. *Goodman*, 17 Pick. 519. *Beatty* v. *Wray*, 19 Penn. St. 516 *Brown* v. *McFarland*, 41 Penn. St. 129. *Lyman* v. *Lyman*, 2 Paine, 11 *Tillotson* v. *Tillotson*, 34 Conn. 335. *Ames* v. *Downing*, 1 Bradf. 321. *Hit* v. *Hite*, 1 B. Mon. 177. *Piper* v. *Smith*, 1 Head. 93.