GODFREY *v.* TEMPLETON.

2pi 161
3pi 13

(*Knoxville.* November 4th, 1887.)

1. PARTNERSHIP. *Salaries to partners allowed only on contract. Quantum of proof.*

Salaries will not be allowed to partners for services rendered in conducting the firm business, without satisfactory proof of a contract therefor; and when the claim is made by surviving partners against the estate of a deceased partner, it will "be allowed only upon the fullest, most cogent, and satisfactory proof" of a contract.

2. SAME. *Salaries to surviving partners continuing the business allowed, when.*

Where a contract exists by which members of a firm are entitled to compensation for services, and one member dies, directing by his will a continuation of the partnership business, which is done with the assent of his personal representative, the surviving partners are entitled to compensation for services rendered in conducting the business after their co-partner's decease, in accordance with the terms of the pre-existing contract.

3. EVIDENCE. *Parties as witnesses. Surviving partners not competent for each other against deceased partner's estate.*

Surviving partners are not competent witnesses, either for themselves or *for each other,* to prove a joint firm contract made between themselves and a deceased partner, in the establishment of which they have a common interest, and by virtue of which they seek a recovery in favor of each in a joint suit against the deceased partner's administrator.

Code cited : ? 4565 (M. & V.); ? 3813 *d* (T. & S.).

FROM KNOX.

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

12

TAYLOR & HOOD AND HENDERSON & JOUROLMON for Complainants.

WASHBURN & TEMPLETON for Templeton.

H. H. INGERSOLL for Devisee.

CALDWELL, J.   Thomas Brown, his son, R. H. Brown, and nephew, T. S. Godfrey, were partners in the ownership and operation of " Concord Marble Quarry."

The copartnership was formed by parol agreement on the 1st of September, 1881, and was dissolved by the death of Thomas Brown, in March, 1885.

The original bill in this cause was filed by the surviving partners against Jerome Templeton, administrator, with the will annexed, of Thomas Brown, deceased.   In this bill they allege, in substance, that it was agreed between them and the deceased, at the time of the formation of the partnership, that these complainants should be the active members, and transact the business of the firm, and that, in consideration thereof, they were each to receive a salary of $100 per month, in addition to their respective shares of the anticipated profits; that the business had yielded good profits, which, by the contract of partnership, were to be shared, one-half by the deceased and one-fourth each by the surviving partners.

The prayer is for an allowance of the salaries,

as claimed by complainants, and for a partition and division of the partnership property.

Templeton, administrator, etc., filed his answer, as a cross-bill, in which he sought a general account of the partnership business, and denied the contract, or right of the surviving partners to receive salaries.

Upon a reference to the Master, he reported in favor of an allowance of salaries at the rate claimed from the 1st of January, 188?, up to the death of Thomas Brown.

Both sides excepted; and, upon the exceptions of the surviving partners, the Chancellor allowed them salaries at $100 per month, not only for the period just mentioned, but for the sixteen months preceding the 1st of January, 1883, and also for the time elapsing between the death of Thomas Brown and the appointment of a receiver in this cause—November 1st, 1885.

Templeton, the administrator, etc., has appealed; and upon that part of the decree relating to salaries, has assigned several grounds of error.

In the examination of the question of salaries, the report and decree thereon, we divide the time covered by the decree into three parts:

*First*—The allowance of salaries from the 1st of January, 1883, up to the death of Thomas Brown was proper.

It is sustained by the books and pay-rolls of the firm, which show that for this period the salaries claimed were actually paid to R. H. Brown

and T. S. Godfrey in the life-time of Thomas Brown, by the evidence of the witness, J. O. Brown, who kept the books part of the time, and says that the deceased was about the office and in the presence of the books and pay-rolls, at such times and under such circumstances, that he must have known of the payment of these salaries; and by the presumption, under the facts of this case, in the absence of any proof to the contrary, that he, as partner, knew of the general course of the business of the firm, and of so important a part of its disbursements as the payment of these salaries. All these, taken together, authorized the allowance of the salaries for this period.

*Second*—As to salaries for the sixteen months between the formation of the copartnership, on the 1st of September, 1881, and January 1st, 1883, the commencement of the period just considered.

The books and pay-rolls of the firm avail the surviving partners nothing as evidence on this point, but rather the contrary. They are entirely silent with respect to salaries for these partners during these sixteen months; and that very silence affords a strong presumption against the claim now made. This presumption is the greater, because of the fact that these partners made, or had made, corrections upon the books with reference to their salaries, more than once during the lifetime of their deceased partner.

But the surviving partners put themselves upon

the stand as witnesses, and each of them swore, in substance, that it was agreed and contracted between them and their deceased partner at the time of the formation of the copartnership, and as a part of the contract upon which it was formed, that they, R. H. Brown and T. S. Godfrey, should have and receive for their services to the firm, from its inception, $100 each per month as salaries over and above their respective shares of the profits. If this evidence is competent, it is sufficient to make out their case for the sixteen months now under consideration, though the books are silent upon the question of their salaries for this period.

The administrator of the deceased partner excepted to these depositions as incompetent, under Section 4565 of the new Code, which is as follows:

"In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party."

Upon this exception the Chancellor was of the opinion that the deposition of Brown was competent as to the original contract with respect to Godfrey's salary, and that Godfrey was a competent witness as to the original contract to pay Brown a salary. To that extent he overruled the exception and admitted the evidence, thus allowing

each surviving partner to swear for the other touching a transaction with the deceased partner in a litigation with the administrator of that partner. In this holding the Chancellor was clearly in error.

Brown and Godfrey sought to prove *the same joint firm contract, in the establishment of which they had a common interest, and by virtue of which they alike anticipated a recovery* affecting the estate of the deceased partner, with whom they claim to have made the contract. If one may have the salary the other may have it, for the same reason and under the same contract. They are no more competent to testify for each other as to this contract than they are to testify each for himself, and being confessedly incompetent to speak for themselves they are incompetent alike to speak for each other.

Numerous other witnesses were examined with reference to conversations with the deceased upon the question of salary to his son and nephew. Several of them make statements, tending to show that such salaries were to be paid, and were being paid with his knowledge and consent. But without going into minute detail, we are content to say that the whole of the proof thus made fails to produce that degree of conviction which is required in a case like this.

It is a case of partners making the unusual claim of a right to receive salaries from the firm in addition to a participation in its profits, and that, too, against a deceased partner.

Godfrey *v.* Templeton.

The claim can be allowed only upon the fullest, most cogent, and satisfactory proof. In the absence of such proof covering the first sixteen months of this firm's existence, the decree allowing salaries for this period is reversed.

*Third*—As to salary from the death of Thomas Brown in March, 1885, to the appointment of the receiver on the 1st of November, 1885.

The surviving partners operated the quarry and conducted the business in the usual manner and with profit during this period; and for this they claim salaries, as for the periods already considered.

It is well settled that surviving partners will not generally be allowed compensation for services rendered in winding up and settling the business of the firm. But that is not this case. The business of the firm was continued for the sake of profit, and the object was accomplished, resulting beneficially alike to the surviving partners and the estate of the deceased partner, the continuance of the business even for a longer time being expressly authorized by the will of the deceased partner and with the knowledge and consent of the administrator, with the will annexed.

We have already seen that the deceased partner must have known of and consented to the payment of salaries entered upon the books and payrolls of the firm, from which it is, with fairness and justice, inferred and presumed that he intended salaries should be continued in the same manner

after his death, in case the business should be continued as directed or authorized by his will.

The decree allowing the salaries for this time was correct.

Many other errors have been assigned upon other parts of the decree on the general account. Only two of these assignments, the fifth and sixth, are sustained by the record, and we need only state, as to these, that they are well assigned for the reasons therein set out.

The decree will be modified as indicated in this opinion.

The surviving partners will pay all the costs of this Court, and the costs below will be paid as adjudged by the Chancellor.

PARTIES AS WITNESSES.

Summary of the statutes and decisions of this State on this subject:

### I. Statutes.

Acts, 1867–8, Chapter 75, first made *parties*, and persons *interested in the subject-matter of suit*, competent witnesses in civil cases.

Acts, 1868–9, Chapter 7, (Extra Session,) put the above Act into operation December 17, 1868. 1 Heis., 310; 7 Heis., 104.

Acts, 1869–70, Chapter 19, Section 1, first enacted an exception where one party to the transaction was dead.

Acts, 1869–70, Chapter 78, repealed expressly the last mentioned Act, and by re-enacting the entire law on this subject, with modifications, repealed all former Acts by implication. 85 Tenn., 450, 495.

This Act has remained in force ever since, and is carried into Codes at

Section 3813, *c, d, e,* (T. & S.,) and Sections 4563–4565, (M. & V.,) but not literally in the latter.

Acts, 1870, Chapter 95, withdrew the book debt law (Sections 3780–3785, T. & S. Code,) from the operation of these statutes.

Acts, 1871, Chapter 107, exempted parties from rule. (Code, M. & V., Section 4566.)

(Held otherwise in 2 Bax., 343.)

Acts, 1879, Chapter 200, excepts cases where one party is disqualified to testify by "idiocy, lunacy, or insanity." (Code, M. & V., Section 4564.)

As to ·competency of husband and wife, when parties, see Acts, 1869–70, Chapter 19, Section 2, and Acts, 1879, Chapter 200, Section 1.

. Acts, 1887, Chapter 79, makes defendants in criminal cases competent witnesses in their own behalf.

## 2. DECISIONS.

### IN GENERAL.

*Courts should proceed cautiously* in the construction of these Acts. 5 Bax., 604; 9 Lea, 16.

*Reasons* for exclusion of living party where his adversary is dead. 12 Heis., 87, 88; 2 Lea, 48; 9 Lea, 16; 6 Lea, 645.

*Exception in favor of administrators, etc. :*

Not extended to cases not within its provisions. ·12 Heis., 87, 88; 6 Lea, 645; 9 Lea, 16; 10 Lea, 115.

Applies to *parties only*, not to *interested* persons. 4 Bax., 578; 6 Lea, 645.

Excludes only "transactions with, or statements by," the deceased, leaving witness in other respects competent. 7 Bax., 576; 12 Heis., 338; 10 Lea, 116.

*Devisavit vel non* is not a suit by or against an administrator. 9 Bax., 604; 6 Lea, 543; 3 Lea, 61.

Nor widow's suit, in administrator's name, for husband's death. 8 Bax., 49.

*Act repeals* last clause of Section 1169, (T. & S.) Code, and makes railroad employes competent. 2 Lea, 246.

*Does not affect* Sections 3780–3785, (T. & S.) Code. (Book debt law.) (See Acts, 1870, Chapter 95.) 6 Heis., 329.

*Parties who become witnesses* are subject to rule. 2 Bax., 343.

(But see Acts, 1871, Chapter 107.)

*Clause permitting Courts* to require a party to testify unconstitutional. 9 Bax., 429; 11 Heis., 213.

*Disqualification of interest* is absolutely removed. 4 Bax., 578.

*Defendant,* in suit for malicious prosecution, may testify to his good faith. 4 Lea, 89.

Godfrey *v.* Templeton.

In regard to competency of parties to testify as to "transactions with, or statements by," deceased adversaries, there are numerous decisions.

### WHO ARE HELD COMPETENT.

*All persons, not parties,* however *interested.* 6 Lea, 645; 4 Bax., 578.
*On issue of devisavit vel non:*

Legatees and devisees. 9 Bax., 604.

Legatee, who is also administrator. 6 Lea, 543.

Husband of a legatee. 3 Lea, 617.

*Executor de son tort,* sued by creditors of deceased. 1 Bax., 5.
*Heirs:*

As to ancestor's declarations in making advancement. 9 Bax., 604.

Suing for land,—opposite party competent. 12 Heis., 83.

*Administrator,* on issue of *devisavit vel non.* 6 Lea, 543.
*Widow:*

Suing in name of her husband's administrator for husband's death. 8 Bax., 49.

Sued personally,—opposite party competent. 9 Bax., 351.

*Principal debtor,* who is not a party, in a contest between his creditor's executor and his stayor. 5 Bax., 574.

*Joint obligor,* who submits to judgment, competent for executor of his co-obligor, upon appeal by the latter. 6 Lea, 645.

*A vendor,* under whom both parties claim, himself not a party. 9 Lea, 16.

*A vendee,* being a party, in a contest between the administrator of his vendor and his mortgagee, as to priority of lien. 10 Lea, 107.

*Depositions,* when given by deceased on point in issue, both parties competent. 8 Bax., 446; 2 Lea, 48.

*A party called by "opposite party,"* who is antagonistic in interest. 10 Lea, 115; 6 Lea, 645.

Can a plaintiff call a defendant to testify against his co defendant, an executor? 6 Lea, 645.

*Railroad employes,* in suit against road. (Code, T. & S., Section 1169.) 2 Lea, 246.

*Husband or wife,* for him or herself. 2 Lea, 101; 9 Bax., 305; 3 Lea, 617.

*Lost paper;* proof of loss, or contents. 4 Bax., 554.

(See Acts, 1869-70, Chapter 19, Section 3.)

### WHO ARE HELD INCOMPETENT.

*Parties required to testify* by the Court. 9 Bax., 429; 11 Heis., 213.

*Parties to suit* on proven account from another State. (Acts, 1870, Chapter 95.) 6 Heis., 329.

*Guardian,* in suit by ward, involving his management of ward's estate. 12 Heis., 101.

*A party called by "opposite party,"* not antagonistic in interest. 8 Lea, 453; 10 Heis., 447.

*Maker* of witnessed instrument to prove its execution. 7 Bax., 524.

*Administrator,* suing for himself and his intestate, on note given them jointly. 11 Heis., 596.

*A debtor:*

> As defendant to suit by his creditor, against his fraudulent vendee's administrator. 10 Heis., 447.
>
> As defendant to suit by his judgment creditor, to reach funds in hands of his debtor's administrator. 8 Lea, 453.

*Depositions,* where deceased has not testified. 11 Heis., 593.

*Living party,* as to contract made with agent of deceased. 11 Heis., 681. (This case is unsatisfactory.)

*Husband and wife:*

> For or against each other. 6 Heis., 256. (Modified. 3 Lea, 620; 2 Lea, 101.)
>
> In divorce cases? 10 Heis., 345.
>
> As to matters coming to their knowledge through marital relation. 2 Lea, 101; 3 Lea, 617; 10 Lea, 243.

### IN CRIMINAL CASES.

Defendant testifying in his own behalf, may be impeached as other witnesses. Price Peck *v.* State, *post,* p. ——.

Infamy does not disqualify a defendant to testify. Morgan *v.* Pickard, *post,* p. 208.