Condon v. Callahan.

## CONDON et al. v. GEORGE W. CALLAHAN et al.

### (*Knoxville.*  September Term, 1905.)

1.  **PARTNERSHIP.** Compensation to surviving partner for completing construction contracts, when.

    A partnership contract for the  construction of railroad  work
    providing that the services of each member of the firm should
    be compensated for by similar services of the other member
    is construed to mean, not that neither partner should receive
    anything for his services, but that the work of the one should
    offset the work of the other; and the surviving partner is en-
    titled to reasonable compensation for his skill, labor, and ser-
    vices in the completion of a valuable railroad construction con-
    tract left unfinished upon the dissolution of the partnership by
    the death of the other partner, especially where done with the
    express consent of the deceased partner's executor and sole leg-
    atee; and the allowance should be made in view of the large
    profits realized.  (*Post, pp.* 287-298.)

    Cases cited and approved:  Godfrey v. Templeton, 86 Tenn., 167;
    Brown v. De Tastet, 1 Jacob, 284; Cameron v. Francisco, 26
    Ohio St., 190; Schenkl v. Dana, 118 Mass., 236; Griggs v. Clark,
    23 Cal., 427; Newell v. Humphrey, 37 Vt., 265; Maynard v.
    Richards (Ill.), 46 N. E., 1138, 1142, 57 Am. St. Rep., 151, 152;
    Mellersh v. Keen, 27 Beav., 236; Airey v. Borham, 29 Beav.,
    620; Gilmore v. Ham (N. Y.), 36 N. E., 826, 40 Am. St. Rep.,
    570.

    Cases cited and distinguished: Piper v. Smith, 1 Head, 94; Berry
    v. Jones, 11 Heis., 207.

2.  **SAME.** Same. Right of surviving partner to compensation
    for completing construction contract is not defeated by offer to
    settle for a certain sum as walking boss, when.

    The fact that the surviving partner offered to accept a certain
    sum for his services as walking boss, but not as compensation
    for completing a valuable railroad construction contract after

the dissolution of the partnership by the death of the other partner made for the purpose of arriving at a settlement which was not accomplished, does not affect his right subsequently to recover for his services in completing such contract. (*Post,* pp. 289, 290, 298.)

3. SAME. Employment of railroad engineer by railroad construction contractor is not against public policy, when,

Where, in the performance of a contract for railroad construction, one of the members of the contracting firm, with the consent or knowledge of the other, employed and paid the engineer of the railroad to do certain work for the firm, which was not in conflict with the engineer's duty to the railroad company, and it not appearing that the railroad company was ignorant of such employment and services, it was not contrary to public policy to such an extent as to disallow a credit for the expenditure. (*Post,* pp. 298, 299.)

4. SAME. Firm entitled to same average profit on subcontract taken from it by one member as upon other subcontracts, when contract so provides.

Where the contract for railroad construction provided that either member of the contracting firm might subcontract a part of the work from the firm, to be dealt with as other subcontracts, the firm is entitled, as against one of its members subcontracting a portion of the work, to the same average profit made by the firm on the work done by the other subcontractors. (*Post,* pp. 288, 289, 299-301.)

5. SAME. Surviving partner is not liable for interest on fund in bank awaiting settlement, and pending suit for settlement, when.

The surviving partner is not liable for interest on money deposited in bank, in the firm name, and not used by him, and not yielding any interest or profit to him, awaiting settlement between the parties, upon terms of which they disagreed, without his fault, and pending a suit for a settlement. (*Post,* pp. 289, 301.)

Condon v. Callahan.

## FROM KNOX.

Appeal from the Chancery Court of Knox County.— JOSEPH W. SNEED, Chancellor.

WEBB, M'CLUNG & BAKER, for complainants.

SHIELDS, CATES & MOUNTCASTLE, for defendants.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a bill by the executrix of M. J. Condon, deceased, to settle up the partnership that existed between M. J. Condon and the defendant Geo. W. Callahan.

This partnership was entered into for the purpose of constructing certain railroad work, and there is no controversy about its terms, nor the proportionate interests of the parties thereunder.

The partnership entered into an important and very expensive contract for railroad construction around Keogan Tunnel, near Harriman, Tenn. Soon after the work was commenced M. J. Condon was killed, and the work was carried on and the contract was completed by Callahan, as surviving partner, by the consent of the executrix.

It was one of the terms of the partnership that the services of each member of the firm should be compensated for by similar services of the other member of the firm, and there was no contract as to the status of the parties in the event either died.

The profits were from time to time divided and when a final settlement was attempted to be made Callahan claimed certain items of expense which it was alleged were not in accord with the partnership contract.

Thereupon this bill was filed to have the partnership of M. J. Condon and Callahan wound up and the rights of the parties determined.

The contract resulted in a profit of some $67,000, and there was a fund of $6,119.87 in the East Tennessee National Bank to the credit of M. J. Condon & Co., where it was originally deposited, and where it had ever since remained until paid into court.

The chancellor passed upon the rights of the parties, and declared the proportion in which they should share these funds, and adjudicated the costs. The complainants prayed a broad appeal, and the defendant Callahan prayed an appeal from so much of the decree as failed to charge the estate of M. J. Condon with twelve and one-half per cent. profit upon the gross amount of work which was sublet by M. J. Condon & Co. to Ed. L. Condon and M. J. Condon on a prior contract in South Carolina, and because he was refused proper salary as walking boss in connection with the work at Harriman, and for his services in completing the Harriman contract.

In the court of chancery appeals a number of assignments were made by both parties, and the decree of the chancellor was affirmed, except that the defendant Callahan was allowed an additional sum of $903.73, on account of the South Carolina contract, and both parties have appealed to this court.

The first assignment made by the defendant Callahan is that the chancellor and the court of chancery appeals should have allowed him $6,300 compensation for carrying out and completing the contract made by M. J. Condon & Co. to build the railroad around Keogan Tunnel, which resulted in a profit to the firm of about $67,000. For this service he was actually allowed by the chancellor and the court of chancery appeals the sum of $2,700.

Upon this feature of the case the complainants assign as error that Callahan should not have been allowed any compensation whatever for his services after the death of his copartner, M. J. Condon.

We will consider these assignments of error together.

The court of chancery appeals report that it was a provision of the contract between the partners that each of them should devote his entire time to the business of the partnership and that the work of one partner should offset the work of the other.

That court reports that Callahan, in negotiating with Mrs. Condon and her son for a settlement, was willing to accept the $2,700 for his services. They further report that she at first agreed to this allowance, but afterwards repudiated her agreement.

115 Tenn.—19

That court says that, while the weight of the proof tends to show that Callahan performed double service, in addition to the service of a walking boss, and that his extra service, aside from his walking boss service, was worth the sum claimed by him, still that his own valuation of his services when the settlement was attempted between him and Mrs. Condon was the most reasonable basis to accept.

That court declined to allow Callahan $150 per month for services as walking boss, because those services were rendered as surviving partner, in the prosecution and completion of the work; and the amount allowed him of $2,700 was allowed him by that court presumably upon the idea that it was a proper compensation for his services in carrying out the contract, and these services were rendered as surviving partner.

So that, as we view the findings of the court of chancery appeals, the $2,700 allowed to Callahan by that court was for his services as surviving partner, and not simply as walking boss.

The question presented, then, is whether, under the contract between the partners and the facts developed in this record, the defendant Callahan should be allowed anything for his services as surviving partner, and, if so, how much.

As we construe the contract, it is not that neither partner should receive anything for his services, but that the work of the one should offset the work of the other. In other words, it was contemplated that the services of

Condon v. Callahan.

each would be worth the same, and that each should receive his share of the compensation in the services of the other.

On account of the death of M. J. Condon, he was unable to comply with his part of the contract and do his part of the service.

We think the law in such case would imply that the partner doing the whole of the work should have reasonable compensation for that part of it which would have been done by the deceased partner, if he had lived; or, in other words, he was entitled to compensation for that part of his work which his deceased partner would have contributed.

Now, the general rule is that, as between partners, the surviving partner is entitled to make no charge for his services in winding up the partnership. Still this rule does not apply in all cases, but only to cases where the business is immediately put an end to and no further work is done, except to close up the matter of account as between the partners, pay the debts, and distribute the surplus, if any.

In the case of *Godfrey* v. *Templeton,* 86 Tenn., 167, 6 S. W., 49, it is said:

"It is well settled that surviving partners will not generally be allowed compensation for services rendered in winding up and settling the business of the firm; but that is not this case. The business of the firm was continued for the sake of profit, and the object was accomplished, resulting beneficially alike to the surviving partners and

the estate of the deceased partner; the continuance of the business even for a longer time being expressly authorized by the will of the deceased partner, and with the knowledge and consent of the administrator with the will annexed."

In the present case the contract was continued by Callahan, as surviving partner, with the express consent of the executrix and sole legatee. It was necessary that it should be so continued, in order to realize the benefits of the existing contract by completing it and to prevent loss by abandoning it; and it did result in a profit of about $50,000 to the representatives of M. J. Condon, and about $17,000 to Callahan.

Bates on Partnership states the rule as follows:

"The principle applies to the burden of winding up after death, and the surviving partner can claim no extra compensation for it, the death of a copartner being one of the risks necessarily incurred by each; but the rule applies merely to the simple and immediate winding up by collecting the assets, paying the debts, and accounting for the surplus, as is necessarily involved in the creation of the partnership and implied in the contract. But for time, skill, and trouble expended beyond this, and inuring to the general benefit, the reason of the rule fails, as where, after dissolution, a partner successfully continues the business of the firm, using the original capital, good will, or other assets, and a benefit is received from his efforts, he is allowed to deduct from the profits a compensation, varying according to

. Condon v. Callahan.

the state of the account, the nature of the business, the difficulty and results of the undertaking, and, perhaps, its necessity or desirability.

"The most usual application of this limitation of the principle is the case of a surviving partner continuing the firm business or completing the enterprise of the partners.

"In *Brown* v. *De Tastet,* 1 Jacob, 284, where the surviving partner continued the business with the original capital and was required to account for the profits, allowances were ordered to be made to him, not necessarily as wages, but such as the master should find proper.

"In *Cameron v. Francisco,* 26 Ohio St., 190, where the surviving partner, without being under contract to do so, continued the business (the publication of a newspaper), and by thus being enabled to sell it as a going concern, preserved a valuable good will which would otherwise have been lost, and the personal representatives, on electing to share the profits, were required to deduct a reasonable compensation.

"In *Schenkl* v. *Dana,* 118 Mass., 236, the property of the firm consisted of patents for improvements in weapons of war and valuable contracts with the government, and a manufactory and stock for fulfilling them, and the the surviving partner, having completed the contracts and entered on new ones, was held entitled to extra compensation for all services in excess of mere winding up.

"In *Griggs* v. *Clark,* 23 Cal., 427, where the value of the assets was enhanced by the labor and time of the

surviving partner to the extent of $6,000, he was allowed $1,400 out of the profit from the enhanced value.

"In *Newell* v. *Humphrey*, 37 Vt., 265, partners in the business of buying cattle on commission had canvassed the territory, and ascertained who would have cattle to sell, without contracting with them, and then one partner died. Much time and labor having been spent, the commissions on these inchoate transactions were held to be partnership assets, but an allowance to the surviving partner for his time and expenses in completing them was held just and proper."

Bates on Partnership, sections 772, 773, pp. 821-824.

"The rule that a surviving partner is entitled to no extra compensation applies to his services in winding up the partnership. The winding up or settling of the partnership affairs after the death of one of the partners may be said to consist, as a general thing, in selling the property, receiving moneys due the firm, returning the capital contributed by each partner, paying the firm debts and advances of the partners, and dividing the profits. Where, however, the surviving partner renders services in excess of the mere winding up of the partnership affairs, he will, under certain circumstances, be entitled to compensation for such excess." 17 Am. & Eng. Ency. of Law, 1154, 1183; 2 Lindley on Partnership, 1046; Collyer on Partnership, section 328; Parsons on Partnership, section 346. It is said in Bates on the Law of Partnership, at section 773: "The rule applies merely to the simple and immediate winding up, by collecting

the assets, paying the debts, and accounting for the surplus, as is necessarily involved in the creation of the partnership and implied in the contract; but for time skill, and labor expended beyond this, and inuring to the general benefit, the reason of the rule fails. The most usual cases, where the surviving partner is allowed compensation, are cases where he successfully continues the business of the firm, or successfully completes an enterprise in which the firm has been engaged, so that a substantial benefit is received from his efforts. The amount of compensation will vary according to the state of the accounts, the nature of the business, the difficulty and results of the undertaking, and its necessity or desirability." 2 Bates on Partnership, section 773; Am. & Eng. Ency. of Law, 1183. "If he performs such extra services with the consent of the representatives of the deceased partner, such consent is sometimes an important factor in determining the question whether he is entitled to compensation. His claim to compensation will in connection with the circumstances mentioned, be looked upon with favor, if the representatives of the deceased partner elect to share in the profits realized from his services as surviving partner." *Maynard* v. *Richards* (Ill.), 46 N. E., 1138, 1142, 57 Am. St. Rep., 151, 152.

"The business may be of such a character that, on the dissolution of the partnership, it cannot be closed at once to advantage, and it is therefore continued with the expressed or implied assent of all the partners, and by a like assent is committed to the care and manage-

ment of some only of them. In such cases the partner
or partners in possession of the assets and continuing
the business will in equity be regarded as in some re-
spects occupying the position of trustees, and as such
entitled to be compensated for services in the manage-
ment of the trust property; and, whether or not any per-
sonal claim can be maintained therefor against the other
partners, the value of the services may at least be de-
ducted from accounting for profits realized from the
business. *Mellersh* v. *Keen,* 27 Beav., 236; *Airey* v. *Bor-
ham,* 29 Beav., 620; *Newell* v. *Humphrey,* 37 Vt., 265;
*Schenkl* v. *Dana,* 118 Mass., 236." *Gilmore* v. *Ham* (N.
Y.), 36 N. E., 826, 40 Am. St. Rep., 570.

The cases of *Piper* v. *Smith,* 1 Head, 94, and of *Berry*
v. *Jones,* 11 Heisk., 207, 27 Am. Rep., 742, are not in
conflict with these authorities, or with the decisions of
this court in the case of *Godfrey* v. *Templeton,* 86 Tenn.,
161, 6 S. W., 47.

In the case of *Berry* v. *Jones* a bill was filed to wind
up a partnership, and one of the partners insisted upon
his right as surviving partner to act as receiver in wind-
ing up the partnership affairs. This court simply
held that the surviving partner was not entitled to com-
pensation for his services in winding up the affairs of
the partnership; that is, in selling the assets, collecting
the moneys due the firm, paying its debts, and distri-
buting the profits among the partners. This is the gen-
eral rule as laid down by all the authorities.

The case of *Piper* v. *Smith,* 1 Head, 94, was also a

case of winding up a partnership.   It is true the firm at the time of the death of one of the partners was building some houses for itself, which had to be completed for the benefit of the firm, and it was there said that the surviving partner was not entitled to compensation for his services in superintending the finishing of said buildings.   The question of carrying out an enterprise with a third party was not involved in that suit.

We are of opinion that, under the law and the facts of this case, the defendant Callahan was entitled to reasonable compensation for his skill, services, and labor in completing the contract, and the allowance should be made in view of the results realized.

It is left a little indefinite by the finding of the court of chancery appeals and under the claim of Callahan, what this amount should be, or, rather, the length of time he was engaged in completing the contract is differently stated—in some places at eighteen months, and at other places at twenty-three months; and the defendant Callahan claims that he is entitled to compensation at the rate of $300 per month for the time thus employed.

The court of chancery appeals, in effect, reports that his services were worth all or more than he claims.

Upon the basis of eighteen months, the compensation would be $5,400; upon the basis of twenty-three months, it would be $6,900.   The defendant makes claim in round numbers for $6,300.

Under this state of the record, we think we should fix the amount at $6,300.

The offer to take $2,700 on the part of Callahan was one based upon his services as walking boss. It was not offered as compensation to carry out the contract. It may be, if the proposed settlement had been accepted, no claim would have been made for services as surviving partner. The offer, moreover, was tentative merely, in order to arrive at a settlement. When Callahan was put to his legal rights, he insisted upon reasonable compensation, and the court of chancery appeals report that $6,300 is reasonable.

The complainant assigns as error that defendant Callahan should have been charged personally with $3,100, which he claims to have paid to G. Bottinger, the engineer of the railroad company.

It is said that such payment, if made, was for the purpose of bribing and corrupting the engineer of the railroad company, and was immoral, and against public policy, and Callahan should not have compensation for the same.

It appears that this man Bottinger was employed with the approval of M. J. Condon before he died: and the court of chancery appeals report that the work which he was employed to do, and which he did do, was not in conflict with his duty and work with the railroad company.

That court says that the evidence wholly fails to show any fraud or collusive purpose in the employment of this man to beat or defraud the railroad company or to contravene any rule of sound public policy. No effort

was made to conceal his employment from the railroad company, and it does not appear that the railroad was ignorant of his employment or the nature of the services he was rendering to the defendant.

That court continues that, in addition to all this, it reasonably appears from the evidence that complainants knew that he was employed, or that such services as Bottinger rendered were being paid for as the work progressed, and charged up to the general expense account; and, indeed, it does not appear that they ever objected to allowing the credit assailed.

Under this state of facts we think the credit of $3,100 was properly allowed as a credit to Callahan, and the assignment of error complaining of the same is not well taken.

Complainants' fourth assignment of error is that the court of chancery appeals erred in charging M. J. Condon's estate with $3,614.95, profits alleged to have been made on a subcontract with M. J. Condon and Ed L. Condon in South Carolina.

It appears that Callahan and M. J. Condon, previous to the contract now under consideration, had a contract to build 81 miles of track from Cheraw to Columbia, S. C., for the Seaboard Air Line. One of the provisions of that contract was that either member of the firm might subcontract enough work from the firm to give employment to any men and teams which either party might own or have individually, and which might not be sold to M. J. Condon & Co., and that, in the event that either

or both of said parties should subcontract for any part of said eighty-one miles, he or they should be dealt with as other subcontractors on said line of eighty-one miles.

M. J. Condon did sublet a part of this work to himself and Ed L. Condon at the same price that the company was to get from the railroad company.

The company made an average profit of twelve and one-half per cent, on the aggregate amount of the work done under other subcontractors, and this rate of twelve and one-half per cent under the contract to the Condons would amount to $3,614.95.

Condon died before there was a settlement of the South Carolina business, as between himself and his partner, Callahan, and this matter was never adjusted between them.

The court of chancery appeals finds that, under the South Carolina contract, this sum belonged to the firm to be distributed in the proportion called for by that contract; that is, three-fourths to Mrs. Condon, as executrix, and one-fourth to Callahan. This one-fourth would amount to $903.73.

The court of chancery appeals reports that this sum should be allowed to Callahan in the adjustment of his account with the Condon estate, and that any delay in claiming the same was satisfactorily accounted for by the fact that there had never been any final settlement of the South Carolina business, and that Condon had died unexpectedly and suddenly, just as the firm was entering upon a new and important construction job,

Condon v. Callahan.

and in addition the object of the bill was to wind up the partnership of Condon & Co., and this item, being unadjusted, legitimately came within the scope of the settlement.

Under these facts, we are of opinion that the court of chancery appeals was correct in allowing Callahan this credit of $903.73.

The complainants' fifth assignment of error is because the court of chancery appeals refused to charge Callahan with interest on the money in his hands and under his control, belonging to the firm, after the 25th of January, 1902.

It appears that, when the settlement was attempted between Callahan and Mrs. Condon, as executrix, there was in the East Tennessee National Bank, to the credit of Condon & Co., the sum of $6,119.87. This account had been opened by M. J. Condon in his lifetime, and Callahan after his death continued to make deposits of all the firm money to the same account, and it had all the time remained in the bank to the credit of Condon & Co. Callahan never used this money in any way, and never realized any interest or profit upon the same. It stood to the credit of M. J. Condon & Co., awaiting settlement between the parties, upon the terms of which they could not agree.

We are of opinion that Callahan is not liable for any interest on this amount.

The sixth assignment of complainants, in reference to taxation of costs, is not well made.

Condon v. Callahan.

: Under our view of the case, we are of opinion that complainant should pay all the costs of the appeal.

The decree of the court of chancery appeals is affirmed, except as to the item of compensation to be allowed Callahan for completing the contract and winding up the partnership, and as to that and the adjudication of costs it is modified, so as to allow Callahan compensation of $6,300, instead of $2,700, as fixed by the court of chancery appeals.

The costs of the appeal will be paid as heretofore indicated, the costs of the court below will be paid as adjudged by the chancellor, and the cause is remanded to the court below for further proceedings.