CHARLES W. LITTLEFIELD, Admr. & Tr. *vs.* FRANK R. GORTON.

JULY 25, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a proceeding in equity which is now before this court on the complainant's appeal from a final decree entered by a justice of the superior court overruling the complainant's exceptions to a master's report, confirming such report, denying the complainant the relief prayed for in his bill of complaint, and fixing the master's fee.

The appeal is based on the usual grounds, *viz.*, that such decree is contrary to the law and to the evidence in the cause. The bill of complaint, which was brought by the complainant in his capacity as administrator *d.b.n.c.t.a.* of

the estate of one Byron Read, deceased, late of the town of Coventry, in this state, and also as substitute trustee under the will of said deceased, after setting out certain allegations of fact at considerable length, prayed that the respondent be ordered to account to the complainant, in his capacities as aforesaid, as to certain alleged partnership transactions which had occurred subsequent to January 1, 1927, and to pay over to the complainant whatever sum of money should be found due him after such accounting. As a ground for the granting of such relief, the bill alleged, in substance, that the respondent, by fraud and improper conduct, had induced the making of the partnership agreement in question, and also had improperly and illegally used, managed and disbursed assets of said partnership. The complainant in his bill offered to pay the respondent any sum due him later after the account had been taken. The complainant further asked that the respondent be decreed to hold certain property of the estate of said Byron Read in trust and that the respondent be held accountable in that capacity. The bill contained a prayer for general relief.

After the respondent's answer and the complainant's replication had been duly filed, the latter moved that the cause be referred to a master in chancery to take an accounting. This motion was granted by a justice of the superior court, and a decree was entered appointing a master and directing him to report to such court what balance, if any, shall appear to be due to either of the parties. Thereafter the master filed a draft report to which the complainant made numerous objections. The master then filed in the superior court his final report, together with a transcript of the testimony and the exhibits introduced by the parties at hearings held by him. In his final report the master made thirty-one findings, one of which was that the respondent was not guilty of any fraud or wrongdoing in the premises, and another that no money was due to

the complainant from the respondent. To this final report the complainant, within the proper time, filed nineteen exceptions. These were later passed upon by a justice of the superior court, who then entered the final decree now before us.

The following facts appear from the evidence. For many years prior to December 29, 1926, Byron Read had conducted, in Coventry, an undertaking establishment and a store in which furniture and household goods were sold. This business had proved to be extremely profitable, and from it he had accumulated a considerable estate. Since 1900 the respondent had been employed by him as an undertaker and embalmer. Byron Read had two sons, Charles, who took little or no part in the above-mentioned business, knew nothing about it and was not qualified to run it, and Herman, who was actively engaged with his father in said business. In December 1926, Byron Read was about eighty-two years of age and unable to move about without help. He had not been active in the business for some considerable period. At the above date his son Herman was also in poor health. For some time the business had been conducted solely by the respondent.

During the latter part of 1926 the respondent had been threatening to start his own undertaking business. As a result, on December 29 of that year Byron Read and the respondent entered orally into a partnership agreement whereby the respondent was to carry on the business under the name of the "Byron Read Company". At that time Byron Read conveyed to the respondent a one-third interest in the real estate where the business was conducted, and also gave the latter a bill of sale of a one-third interest in all the personal property, accounts receivable and good will of the business. It was agreed that the respondent should receive one-third of the net proceeds. Byron Read's two sons acted as witnesses to the execution of the above instruments.

A short time after this partnership was formed Herman died, leaving two young children. Byron Read died November 13, 1927. By his will he bequeathed one half of his estate to his son Charles outright, and one half to him in trust for the minor children of Herman. Charles was named as executor of the will and qualified. Eventually he became financially involved and, on December 30, 1931, was removed as trustee as aforesaid by the superior court, and the present complainant was appointed in his place and is now acting. On July 18, 1932, Charles was removed as executor as aforesaid by the probate court of Coventry, and the complainant was named to that position and duly qualified.

Upon the death of Byron Read the respondent did not liquidate the partnership, but continued to run the business until May 1, 1937. His contention is that he did this with the consent and permission, first of Charles, and then of the complainant. During these ten years the net profits of the business amounted to over $44,000, which were distributed without objection, one-third to the respondent and two-thirds at first to Charles, and later to the complainant, in their respective representative capacities. Between November 13, 1927 and May 1, 1937, the respondent spent considerable sums in renovating the funeral home, purchased new equipment and also paid himself $70 a week salary, which was the amount he had received by agreement, while the partnership was in existence during Byron Read's life. While the respondent, as surviving partner, was conducting the business in question the complainant represented him and the Byron Read Company as attorney in certain litigation involving the alleged partnership transactions, and also assisted in making out income tax returns for the respondent for several years.

About December 9, 1935, H. Milton Read, the son of Herman, and then of full age, went into the funeral-directing business under the name of Ballantyne & Read Co. They

became competitors of the Byron Read Company and their place of business was about three miles from where the latter company was located. In the spring of 1937, the complainant insisted that the partnership be wound up, at one time apparently threatening a receivership, if this was not done. After negotiations the complainant bought out for $10,000 the one-third interest of the respondent in the business, and received from the latter a transfer of all his interest in the real and personal property of the partnership. The respondent at this time suggested that general releases be exchanged, but the complainant refused to do this until after he had had the books of the business audited. After a limited examination of such books the present proceeding was instituted.

In substance the complainant's position is that for several years after his appointment as executor and trustee he was so busy trying to straighten out the tangled condition of the Byron Read estate that he had no opportunity to examine into the affairs of the Byron Read Company, or to take up with the respondent matters concerning the partnership, which had been dissolved by Byron Read's death. The complainant contends that soon after his appointment as trustee he requested the respondent to liquidate the business and to account, but that the latter neglected or refused to do so until 1937, when the complainant became pressing in his demands. The complainant also maintains that he took no part in the business, was not consulted, and did not examine the books until after May 1937. The complainant claims that the evidence shows that during the ten years in question after Byron Read's death the respondent, in running the business, made improper expenditures, caused losses by his neglect, and wrongfully withheld payments which properly were due the trustee and the Byron Read Estate, by reason of which conduct he owed the complainant, in his representative capacities, a large amount of money for which he should account.

On the other hand, the respondent contends that it appears from the evidence that, after Byron Read's death, he continued to operate the business, for the benefit, to the extent of a two-thirds interest therein, of Byron Read's estate and the minor children of Herman and with the consent, first of Charles, and later of the complainant; that neither found fault as to the manner in which the business was conducted during the period in question; that there was then no one else available to run the business; that both Charles and the complainant had some knowledge of the details of the business by reason of the fact that they helped prepare income tax returns; that both received their share of the net profits of the business without objection; that they knew that the respondent was receiving a weekly salary of $70 for conducting the business and that when the complainant really insisted in 1937 that the business be wound up, this was done within a month and a half. The respondent also claims that the evidence shows that he has accounted fully as to his conduct of the business, which he operated in a prudent manner; that all expenditures were reasonably explained by him; that he made a substantial net profit over a period of years when there was in existence a general business depression, and that he owes the complainant nothing.

In passing upon a case which had been referred to a master whose report had been confirmed by the superior court, this court applied the rule that when the evidence is conflicting, as it is in the instant cause, it should not reverse the decree before it, unless it is able to say that the evidence clearly preponderates against the master's finding. *Cook, Borden & Co.* v. *R. Z. L. Realty Corp.*, 50 R. I. 375. See also *Low Estate Co.* v. *Lederer Realty Co.*, 39 R. I. 422, where it was stated that the determination of a master upon questions of fact has a strong presumption in its favor.

After applying the above holdings to the findings of the master, as confirmed by the justice of the superior court, namely, that the respondent was not guilty of fraud, and that

the partnership was not entered into in fraud and other kindred findings on that issue, and after considering the evidence, we see no reason for reversing such findings of the master. It appears from the evidence that Byron Read, though physically infirm on December 29, 1926, was of sound mind; that he executed his will, which was duly admitted to probate, on July 25, 1927, seven months after the partnership agreement was made; that such agreement was entered into with the full knowledge of his two sons and of his niece, none of whom raised any objection; that the respondent was at that time the only person readily available to continue the operation of the business in question, and that one of the sons was the respondent's brother-in-law.

The complainant contends that, according to law, a partnership is dissolved by the death of one of the partners; that ordinarily it then becomes the duty of the surviving partner to wind up the partnership business within a reasonable time; that while so doing he bears a fiduciary relationship to those interested in the deceased partner's estate; and that the burden is on the surviving partner to account fully to them as to partnership matters. Broadly speaking, we believe these views of the law to be correct. The complainant maintains that the master and the justice of the superior court failed to follow them in considering the respondent's conduct subsequent to Byron Read's death.

The master found that Charles, after his father's death, directed the respondent to continue to operate the business as it had been theretofore conducted; that he consulted frequently with the respondent about the business, and by his (Charles') conduct, in effect entered orally, in his representative capacity, into a new partnership agreement with the respondent, which continued until Charles was removed as executor and trustee as aforesaid. The master also found that the complainant, by reason of his conduct in the premises, in his representative capacity, likewise became thereafter, in effect, a partner with the respondent in the conduct

of the business. These findings were sustained by the justice of the superior court.

The complainant urges that they are not supported either by the law or the evidence. He points out that neither Charles nor himself, as executor or administrator, ever received authority from the probate court to continue Byron Read's business. The complainant also maintains that in cases where it has been held that a new partnership comes into existence between the surviving partner and the representatives of the estate of the deceased partner, it appears that an explicit and unequivocal provision to that effect is found, either in the terms of the original partnership agreement, or in the decedent's will. See *Egan* v. *Wirth,* 26 R. I. 363. The complainant claims that no such provision is found in the instant cause.

Assuming, for the purpose of argument, that the complainant is correct in his above contention, in our judgment it does not necessarily follow that the appeal before us should be sustained. We are of the opinion that, in view of all the facts and circumstances appearing in evidence, the respondent can properly argue, as he does, that the complainant, by his conduct in the premises, and in view of the like conduct of Charles, is estopped from now raising the issue that the respondent had no right to operate the business in question during the ten years following Byron Read's death. The instant case is in many respects not unlike the case of *Maynard* v. *Maynard,* 147 Ga. 178, where a surviving partner for over seven years conducted a banking business with the consent of the devisees and legatees of the deceased partner. At page 181, the court stated: "We recognize the rule that though a surviving partner is entitled to wind up the business of the partnership, he is not entitled, in the absence of any provision in the will of the deceased partner or in the articles of the partnership agreement, to continue the business after the death of a copartner. While the surviving copartner had no right to continue the business as a going

concern, still the devisees, having consented to the continuance of the partnership business as a going concern, are estopped from raising the issue that the money subsequently received on deposit should not be treated as a liability of the partnership." See also *Hoyt* v. *Sprague,* 103 U. S. 613.

However, even under such circumstances, when the partnership business is finally liquidated by the surviving partner, he still has the duty of accounting for his conduct of the business to those having a legitimate interest therein. In the instant cause the master found, in substance, that the respondent had fulfilled that duty and that no money was owed by him to the complainant. This finding was affirmed by the trial justice. The complainant contends that this finding was erroneous. Considerable testimony was taken and numerous exhibits were introduced in evidence as bearing upon the manner in which the respondent had conducted the business after Byron Read's death. The complainant questioned a large number of items and transactions and claimed that many expenditures made by the respondent during the period in question were not properly chargeable to the partnership. The respondent gave explanations of these items and transactions that satisfied the master and were approved by the trial justice. It is not necessary or possible to refer to them in detail here.

There is, however, one item which should be given consideration. The complainant argues that under the authorities the respondent was not entitled to pay himself any salary for services rendered in winding up the partnership business; that the evidence shows that he drew from said business a salary of $70 per week during the ten-year period; that such withdrawal was improper and that he should be required to account therefor to the complainant. In general, the authorities support the complainant's position as applied to the ordinary case where a surviving partner winds up, within a reasonable time, a partnership business. 47 C. J. 1063. The instant case, however, is not the ordinary case,

and it clearly appears from the evidence that the respondent, during the time in question, was not merely liquidating the business, but was operating it for the benefit of all concerned. Under such circumstances a surviving partner may properly be reasonably compensated for his services. *Schenkl* v. *Dana,* 118 Mass. 236; *Godfrey* v. *Templeton,* 86 Tenn. 161; *Cameron* v. *Francisco,* 26 Ohio St. 190; 1 L. R. A. (N.S.) 643, note.

In relation to the accounting made by the respondent, the evidence shows that he conducted the partnership business during the period involved in a prudent manner; that he gave reasonable explanations as to various items of expenditures which were brought in issue by the complainant; that the bookkeeping system he used, though now attacked by the complainant, apparently was the same as that employed by Byron Read in his lifetime and by the partnership. Upon consideration, we cannot say that the evidence clearly preponderates against the master's findings in regard to the accounting, as confirmed by the justice of the superior court, and we see no reason for disturbing such findings, or the decision of said justice thereon.

The complainant also contends that the fee allowed the master for his services herein is excessive. The amount of such a fee rests largely within the sound discretion of the justice of the superior court before whom the matter comes for allowance. While the fee in this cause, as fixed by such justice, is ample, we cannot say that its allowance amounted to an abuse of discretion, considering the amount involved in the litigation and the time spent by the master in performing his duties.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Grim & Littlefield, Benjamin W. Grim,* for complainants.

*George Roche,* for respondent.